IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TAMARA JONES,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br>Case No. 2:05-CR-534 TS |

## I.  INTRODUCTION

This matter is before the Court on Defendant's Motion to Suppress.  Under *Miranda*,[1] a suspect subjected to a custodial interrogation must be advised of his or her rights.  Defendant contends her statements should be suppressed because she was subject to custodial interrogation without a *Miranda* warning when questioned in the back of an agent's car and that her consent to search her purse was not voluntary. The Court finds that Defendant was not subject to a custodial interrogation and that her consent to search her purse was voluntary.  Accordingly, the Motion to Suppress is denied.

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).

1

## II.   FINDINGS OF FACT

An Agent with the Department of Homeland Security Immigration and Customs Enforcement stationed in Utah was notified by another office that a package of suspected iodine crystals had been intercepted on its way to an addressee in Sandy, Utah. It was arranged that the Agent would conduct a further investigation. The Agent conducted an investigation and determined that Defendant was the named recipient and that she had a methamphetamine-related arrest in the past year. He went to the address on the package, but it appeared that she no longer resided there. He then determined that she was scheduled to appear at a state district court hearing in Salt Lake City on the afternoon of April 7, 2005, on an unrelated matter. He attended that hearing and followed her out of the courthouse. With another agent he followed her car and they were joined by two other agents in another car. All of the agents were in plain clothes and were driving unmarked cars.

Defendant stopped at a nearby business to let a passenger out and then continued until she stopped at a convenience store at corner of the intersection of two major thoroughfares. The convenience store had gas pumps and a car wash.

Defendant parked by a gas pump and went inside the store. When Defendant exited the store with a beverage and food in hand, the Agent was seated on the hood of his parked vehicle, a four-door sedan, and called to her by her first name. He showed her a badge and said, "I'm a federal agent. Can I talk to you?"[2] Although she appeared

---

[2]Trans. at 9.

nervous to be spoken to by a stranger, she answered, "yes." Another agent was standing by the vehicle but did not enter the conversation. Both agents wore concealed firearms, but none of the agents showed a firearm or handcuffs at any time during the encounter.

The Agent had the package in his hand and showed it to her. He asked if she wanted it and if she knew anything about it. She initially replied "no," but then said "yeah." The Agent asked if he could talk to her in the privacy of the back seat of the car. She agreed to speak more privately. The Agent asked if he could frisk her and asked if she had any weapons. She agreed to be frisked, which he did, but when he asked to search her purse, she declined. He suggested that she leave the purse outside the car and she agreed. She left the purse on the sidewalk in front of the Agent's vehicle together with her beverage and food and entered the back seat of the four door vehicle with the Agent. There was no cage in the vehicle and her door was unlocked. The Agent sat in the back seat with her. Two other agents sat in the front seat, facing front. The fourth agent stood by her purse on the sidewalk to keep an eye on it.

When she first entered the vehicle, the Agent told Defendant that she was not under arrest, and motioning to the unlocked door, told her she was free to leave. He also told her that a federal statute makes it a federal crime for someone to make a false statement to a federal agent. He also said he had enough information to arrest her. Defendant agreed to be interviewed. He asked her to tell him about the package. She said it contained iodine crystals she had purchased on ebay, using a credit card. She explained the price she had paid, the price she hoped to obtain on resale, and that she intended to resell it for delivery to a methamphetamine (meth) cook. The Agent asked about her meth use and

she admitted daily use, including having used earlier on the day of the encounter. They discussed that she was upset about her pending drug charges in state court, her current living arrangements, and that she was driving a rented car.

Sometime during the conversation in the car, Defendant asked for air and an agent rolled the window down and it remained down through the rest of the encounter. She also asked the Agent if she needed an attorney and he replied it was up to her. Towards the end of the interview, Defendant asked for, and was handed, her food and beverage and consumed them.

Although she was nervous during the encounter, the Agent felt he had put her at ease during the conversation and eventually asked her consent to search her purse and car for contraband or illegal items. She agreed and, before the search started, she said that she possessed meth in her purse. The Agent searched her purse while another of the agents searched her car. The search of her car and purse revealed suspected meth and paraphernalia and other items of interest to the officers. The items were booked into evidence. Defendant gave her contact information and address to the Agent and drove away in her car.

The entire encounter took place in the daylight, in the public parking lot of an open business on an intersection of busy streets. The agents did not display weapons at any time, there were no raised voices and Defendant retained control over her purse and identification until she gave consent to search.

### III. DISCUSSION AND CONCLUSION

A. *Miranda*

Defendant contends that her statements must be suppressed because she was subjected to a custodial interrogation without a *Miranda* warning.

The government stipulates that the Agent did not give Defendant a *Miranda* warning, and concedes that she was "likely" interrogated.[3]  But the government contends that *Miranda* does not apply because she was not in custody when interrogated.

The parties agree that "*Miranda* warnings are required when the defendant is in custody and subject to interrogation,"[4] but the issue in this case is whether Defendant was in custody.

> There are three categories of police/citizen encounters.  The first is characterized by the voluntary cooperation of a citizen in response to noncoercive questioning.  The second is a *Terry* stop. . . .  The third category is an arrest usually characterized by highly intrusive or lengthy search or detention.  Case law is well established that a defendant is not in custody under either of the first two encounters and therefore *Miranda* warnings need not usually be given.
>
> * * *
>
> In order to determine whether or not a person is in custody for *Miranda* purposes, a court must examine all relevant facts, the only relevant inquiry being how a reasonable person in the suspect's position would have understood his situation.  If, from an objective viewpoint, someone in [Defendant's] position would reasonably believe her freedom of action had been curtailed to a "degree associated with a formal arrest," then she would be held in custody during the interrogation.[5]

---

[3]Govt. Mem. at 2.

[4]*U.S. v. Griffin*, 7 F.3d 1512, 1517 (10th Cir. 1993).

[5]I*d.* at 1516 (10th Cir. 1993) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)) (other quotations, citations and footnote omitted).

"An encounter is consensual if the defendant 'is free to leave at any time during the encounter.' . . . The correct test is whether a reasonable person in [the defendant's] position would believe [she] was not free to leave."[6]

This Court examines the "totality of the circumstances to determine if a suspect was in custody. While no one factor is dispositive, the following factors may be relevant:

> First, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will often defines the custodial setting. Conversely, the lack of a police advisement that the suspect is at liberty to decline to answer questions or free to leave is a significant indication of a custodial detention. A second factor indicative of a custodial setting is the nature of questioning. . . . A final factor commonly examined is the circumstances showing a "police dominated" atmosphere. Where police are in full control of the questioning environment, custody is more easily found. Circumstances might include: separation of the suspect from family or colleagues who could offer moral support; isolation in nonpublic questioning rooms; threatening presence of several officers; display of a weapon by an officer; physical contact with the subject; and an officer's use of language or tone of voice in a manner implying that compliance with the request might be compelled.[7]

Defendant contends that this case is similar to the *DiGiacomo*[8] case, where the circuit court held that a custodial interrogation requiring a *Miranda* warning occurred when the suspect was separated from his friends in a parking lot by four officers and threatened

---

[6]*U.S. v. Torres-Guevara,* 147 F.3d 1261, 1264 (10th Cir. 1998) (quoting *United States v. Hernandez,* 93 F.3d 1493, 1498 (10th Cir. 1996)) *see also U.S. v. Spence,* 397 F.3d 1280,1282-1283 (10th Cir. 2005) ("A consensual encounter is not a seizure for purposes of the Fourth Amendment. A seizure occurs only when an officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen.")

[7]*Griffin,* 7 F.3d at 1518-19 (citations and quotations omitted).

[8]*U.S. v. DiGiacomo*, 579 F.2d 1211 (10th Cir. 1978).

with arrest if he did not answer their questions. The Court finds that several important factors distinguish *DiGiacomo*. First, in this case, unlike *DiGiacomo*, the Agent explained to Defendant that she was free to leave. Her freedom to leave was reinforced by the Agent's indication that the door was unlocked. Second, she was not confronted by the four agents, but was asked by one agent, sitting on the hood of his car, to discuss the package, while the other agents remained in the background. It was only after she had agreed to speak in the relative privacy of the car, that she ended up in close proximity to the other two agents who were sitting in the front seat. Third, she was not coerced into an interview by being presented with the alternative of immediate arrest if she did not agree to an interview. Nor was she separated from friends.

In the present case, considering the totality of the circumstances, the Court finds that a reasonable person in Defendant's position would have believed that she was free to leave. The agents were dressed in plain clothes and did not display their weapons at any time. The interview was conducted by only one of the agents, who did not raise his voice, or, other than a brief pat-down for weapons, physically touch or restrain her. She agreed to step into the car, was reassured that she was free to leave, that the door was unlocked, and was able to direct that the window be unrolled. She could, and did, retain control of her purse until after her consent to search. The Court finds that Defendant did not make an unambiguous or unequivocal request for an attorney.[9] The Court finds that

---

[9] See *U.S. v. Zamora,* 222 F.3d 756, 766 (10th Cir. 2000) (a request for counsel must not be "ambiguous or equivocal" and Supreme "Court refused to adopt a rule that would require officers to ask clarifying questions if the defendant's statement was ambiguous.") (quoting *Davis v. United States,* 512 U.S. 452, 462 (1994)).

7

the atmosphere was not police-dominated, the interview was conducted in full view of the public and she was told that she was free to leave. The fact that the Agent subjected her to "asking directly incriminating and focused questions" regarding the package, does not transform the consensual encounter into a custodial interrogation where the Agent did not "convey the message that compliance is required."[10]

The Court finds that the interview was consensual at the time she made the statements. Accordingly, she was not in custody and not entitled to a *Miranda* warning prior to her admission.

   B.  Consent to Search

Defendant contends that her consent to the questioning and search are invalid because they were not consensual. The government contends that there is nothing in the record to show her consent was not voluntary.

> We have a two-part test for determining the validity of a consent search. Under this test, the Government must: (1) "proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given"; and (2) "prove that this consent was given without implied or express duress or coercion."[11]

> [T]he federal test for determining the validity of consent to search requires a factual determination based upon the totality of the circumstances of whether the consent was the product of an "essentially free and unconstrained choice by [the] maker" or whether it was the product of "duress or coercion, express or implied." Factors to consider within the

---

[10] *Torres-Guevara*, 147 F.3d at 1265.

[11] *U.S. v. Taverna*, 348 F.3d 873, 878 (10th Cir. 2003) (quoting *U.S. v. Sanchez*, 89 F.3d 715, 719 (10th Cir. 1996) and *U.S. v. McRae*, 81 F.3d 1528, 1537 (10th Cir. 1996)).

federal totality of the circumstances test include physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons. Whether an officer reads a defendant his *Miranda* rights, obtains consent pursuant to a claim of lawful authority, or informs a defendant of his or her right to refuse consent, also are factors to consider in determining whether consent given was voluntary under the totality of the circumstances.[12]

"While such attributes as the age, gender, education, and intelligence of the accused have been recognized as relevant, an intangible characteristic such as attitude toward authority is inherently unverifiable and unquantifiable."[13]

Considering the totality of the circumstances, and for many of the same reasons stated above in connection with the *Miranda* argument, the Court finds that the consent to sit with the Agent and answer questions was voluntary.

As to the purse, the Court notes that this was a relatively brief consensual interrogation and that Defendant did not consent to search her purse until its conclusion when she had already stated her regular use of meth and her plan regarding the package's contents. It was in that cooperative atmosphere that she was asked again regarding a search of her purse and agreed. The Court finds no evidence that the subsequent consent to search was not voluntary. Accordingly, the Court finds that the search was voluntary and the evidence found in the purse need not be suppressed.

---

[12] *U.S. v. Sawyer*, __ F.3d __, 2006 WL 689451, *4 (10th Cir. 2006) (quoting *Schneckloth,* 412 U.S. 218, 225-27 (1973) (other citations omitted).

[13] *U.S. v. Zapata*, 997 F.2d 751, 759 (10th Cir. 1993) (citations omitted).

IV.  ORDER

Based upon the foregoing, it is therefore

ORDERED that Defendant's Motion to Suppress (Docket No. 12) is DENIED.  It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of the new trial setting is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).

DATED  March 24, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge